IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

CHAD SCHWARTZ,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C14-1004

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A.    Schwartz's Education and Employment Background . . . . . . . . . . . . 4
    B.    Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . 4
        1.    Schwartz's Testimony . . . . . . . . . . . . . . . . . . . . . . . 4
        2.    Vocational Expert's Testimony . . . . . . . . . . . . . . . . . . . . 5
    C.    Schwartz's Medical History . . . . . . . . . . . . . . . . . . . . . . . . 6

IV. CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    A.    ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . 9
    B.    Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . 11
        1.    Dr. Ricketts' Opinions . . . . . . . . . . . . . . . . . . . . . . 11
        2.    Credibility Determination . . . . . . . . . . . . . . . . . . . . . 13

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VI. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Chad Schwartz on February 14, 2014, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Schwartz asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Schwartz requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*,

---

[1] On January 8, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the decision of the Administrative Law Judge ("ALJ") meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d

1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

### III. FACTS

#### A. Schwartz's Education and Employment Background

Schwartz was born in 1975. He did not graduate from high school, but later earned his GED. In the past, he worked as a machinist and production team leader.

#### B. Administrative Hearing Testimony

##### 1. Schwartz's Testimony

At the administrative hearing, Schwartz and the ALJ discussed his health problems. Schwartz testified that he has residual lung and breathing problems due to a pulmonary embolism suffered following back surgery in 2011. Schwartz explained that he has trouble going out for walks "because I can go for 15 minutes and then I have to stop and actually catch my breath. If I do anything like strenuous activities, even at home, . . . I have to sit down in front of a fan to catch my breath."[2] Schwartz also indicated that hot weather significantly impacts his breathing difficulties.

Next, Schwartz testified that he has constant pain in his back. He stated "I have a hard time just even bending over to grab something off the floor, let alone trying to pick up anything or do anything else."[3] Schwartz stated that he shifts positions about every five to ten minutes while sitting, and needs to get up and move around from a seated position

---

[2] Administrative Record at 34.

[3] *Id.* at 37.

4

every 30 minutes. He estimated the largest amount he could lift is 20 pounds. Schwartz further stated that his back pain significantly affects his sleep, and limits the amount of sleep he gets every night.

Lastly, Schwartz stated that he has significant pain in his feet. Specifically, Schwartz testified that he has "constant pain in my feet, that I lose feeling in my feet and my feet sometimes turn purple."[4] According to Schwartz, his doctors are trying to treat his foot issues with medication.

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Marian S. Jacobs with a hypothetical for an individual who is:

> limited to performing light work . . . [and] can only occasionally stoop and crouch; and is not able to crawl or kneel or climb ladders, ropes and scaffolds, so some complete preclusion of crawl, climb and kneel; but is able to stoop and crouch occasionally.

(Administrative Record at 62.) The vocational expert testified that under such limitations, Schwartz could not perform his past relevant work. The vocational expert testified, however, that Schwartz could perform the following jobs: (1) data entry clerk, and (2) order filler. The ALJ provided the vocational expert with a second hypothetical for an individual who is limited to sedentary work and requires:

> the freedom to alternate between sitting and standing as often as every 30 minutes as they [are] performing their job duties. And in addition, again, with the same limits on stoop, crouch, kneel, crawl and climb, the very same limits I had given you before, but I want you to assume this worker is limited to performing unskilled work.

(Administrative Record at 66.) Again, the vocational expert testified that under such limitations, Schwartz could not perform his past relevant work, but could perform the

---

[4] *Id.* at 40-41.

5

following unskilled sedentary jobs: (1) charge account clerk, (2) surveillance system monitor, and (3) call-out operator. Additionally, the ALJ inquired:

> leaving everything I've just now given you on that second question in place, but adding yet another functional restriction, I want you to assume that this worker, due to limits in the ability to maintain concentration, would require, I guess I'll call it special intervention from a supervisor. That is to say, even with simple, unskilled work, the worker would require, I'm just going to say ten minutes of supervision, you know, direct reorientation and retraining by a supervisor every two-hour . . . work period during the eight-hour shift. So, every two hours the supervisor needs to come to the worker and sort of orient him to what the job tasks are, what the expectations are, just to kind of get him back going to performing their job task.

(Administrative Record at 67-68.) The vocational expert answered that under such circumstances, Schwartz would be precluded from competitive employment.

Schwartz's attorney also questioned the vocational expert. She inquired:

> Q: Ms. Jacobs, if you added to any of the prior hypotheticals the additional limitation that the person would need to take frequent unscheduled breaks throughout the day, would there be any work?
> A: No.

(Administrative Record at 68.)

### C. Schwartz's Medical History

On March 16, 2011, Schwartz met with Dr. David Segal, M.D., complaining of severe low back and right leg pain since July 2010. Dr. Segal indicated that Schwartz's pain "is getting worse and worse to the point where he could barely function, cough [(*sic*)] barely walk."[5] Dr. Segal noted that at rest Schwartz's pain level "is 4, with any activity

---

[5] Administrative Record at 296.

it reaches a 10."[6] Dr. Segal further noted that Schwartz is in "constant" pain with tingling, numbness, and weakness in his right lower extremity. Schwartz reported that he feels "like he is always going to fall because his right leg is not supporting him."[7] Dr. Segal noted that conservative treatment, pain medication, and epidural steroid injections have failed to alleviate Schwartz's pain. Upon examination, Dr. Segal recommended microlumbar diskectomy surgery as treatment. Schwartz agreed to surgery and two days later, on March 18, 2011, he underwent a microlumbar diskectomy at L5-S1. Following surgery, Schwartz developed four blood clots and was treated for pulmonary embolism. On March 29, 2011, at a post-surgical follow-up appointment with Dr. Segal, Schwartz reported that his back pain was 70%-80% resolved, and he was being treated for a pulmonary embolism.

On July 11, 2011, Schwartz returned to Dr. Segal for another post-surgical follow-up appointment. He reported "in his own words that he is 90% improved."[8] Schwartz also reported that while he continued to suffer from shortness of breath, he was being treated for these residual issues from his pulmonary embolism. Dr. Segal further noted that according to Schwartz:

> he feels stronger since starting physical therapy. He states that he did not do his last week of physical therapy because of the pain in his lungs--it was too hot, and when it is hot, he has trouble breathing. He states his lowest pain level is a 1/10, his highest pain level is 3/10 to 4/10, and today in the office it is 1/10.

---

[6] *Id.*

[7] *Id.*

[8] Administrative Record at 280.

(Administrative Record at 280.) Dr. Segal renewed Schwartz's prescription for Flexeril one last time and released him from his care. Schwartz was directed to see his primary care physician for any further care or concerns.

On July 25, 2011, Schwartz met with Dr. Ronald W. Schope, M.D., for follow-up on his pulmonary embolism. Dr. Schope noted that Schwartz was "still very short of breath with just minimal activity."[9] Dr. Schope opined that "I think he is totally deconditioned. He is markedly overweight at 411 pounds. . . . I think that is more of the problem than anything else. There is certainly not any evidence that we have any significant cardiopulmonary problem at the present time."[10] Dr. Schope recommended that Schwartz partake in pulmonary rehabilitation to get himself reconditioned.

On September 13, 2011, Schwartz's chiropractor, Dr. Robert Ricketts, D.C., provided the Social Security Administration with a letter outlining Schwartz's functional abilities and limitations. Dr. Ricketts stated that "[m]y understanding and observation of Mr. Schwartz's condition is that he is struggling to carry his body weight. With this in mind I don't think Mr. Schwartz should lift or carry."[11] Dr. Ricketts found no restrictions on Schwartz's ability to sit. Dr. Ricketts opined that "[s]tanding unsupported should not be for greater than fifteen minutes. Walking should not be for greater than eight minutes. Mr. Schwartz reports great lack of breath with walking ever since the lung blood clot."[12] Lastly, Dr. Ricketts determined that Schwartz should not stoop, climb, kneel, or crawl.

On February 21, 2012, Schwartz returned to Dr. Schope for follow-up on his pulmonary embolism. Upon examination, Dr. Schope found that Schwartz's lungs were

---

[9] *Id.* at 406.

[10] Administrative Record at 406.

[11] *Id.* at 424.

[12] *Id.*

100% clear. He also had a good cardiovascular examination and good abdomen. Dr. Schope noted some mild shortness of breath, but indicated that Schwartz's primary concerns appeared to be pain and arthritis in his shoulders, back, hips, knees, and toes.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Schwartz is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity

("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Schwartz had not engaged in substantial gainful activity since January 24, 2011. At the second step, the ALJ concluded from the medical evidence that Schwartz had the following severe impairments: degenerative disc disease, obesity, and residual effects of pulmonary embolism and pulmonary hypertension. At the third step, the ALJ found that Schwartz did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Schwartz's RFC as follows:

> [Schwartz] has the residual functional capacity to perform sedentary work . . . except he requires the freedom to alternate between sitting and standing every 30 minutes while on the job. Additionally, he may occasionally stoop or crouch, but cannot crawl, kneel, or climb ladders, ropes, or scaffolds. Finally, due to distraction from pain and shortness of breath, [Schwartz] is limited to unskilled work.

(Administrative Record at 12.) Also at the fourth step, the ALJ determined that Schwartz could not perform his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Schwartz could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Schwartz was not disabled.

## B. Objections Raised By Claimant

Schwartz argues that the ALJ erred in two respects. First, Schwartz argues that the ALJ failed to properly consider the opinions of his treating chiropractor, Dr. Ricketts. Second, Schwartz argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability.

### 1. Dr. Ricketts' Opinions

Schwartz argues that the ALJ failed to properly evaluate the opinions of his treating chiropractor, Dr. Ricketts. Specifically, Schwartz argues that the ALJ's reasons for discounting Dr. Ricketts' opinions are not supported by substantial evidence in the record. Schwartz concludes that this matter should be remanded for further consideration of Dr. Ricketts' opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d

561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR 96-2P, 1996 WL 374188 (1996).

The ALJ addressed Dr. Ricketts' opinions as follows:

> The undersigned does not give weight to the opinions of [Schwartz's] chiropractor, Robert Ricketts, however. Mr. Ricketts opined [Schwartz] should not lift or carry anything, stoop, climb, or kneel. However, as previously referenced, [Schwartz] admitted he could engage in lifting 20 pounds and stooping, kneeling, or climbing up to 20 minutes

> at time. Given these admissions contrary to the opinions of
> Mr. Ricketts, the undersigned give his opinions no weight.

(Administrative Record at 16.) The ALJ further supported his RFC finding for Schwartz and finding of no weight for Dr. Ricketts' opinions as follows:

> Overall, [Schwartz's] improvement after his initial treatment and his physician's characterization that his remaining symptoms are the result of deconditioning strongly suggest he would be capable of sedentary work. In fact, [Schwartz's] admissions within his functional report and at hearing are consistent with those restrictions. As such, the weight of the evidence supports no additional limitations.

(Administrative Record at 16.)

Having reviewed the entire record, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Dr. Ricketts. Furthermore, the Court finds the ALJ provided "good reasons" for rejecting Dr. Ricketts' opinions. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

### 2. *Credibility Determination*

Schwartz argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Schwartz maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Schwartz's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency,

and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing

so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

The ALJ addressed Schwartz's credibility as follows:

> After careful consideration of the evidence, the undersigned finds that [Schwartz's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Schwartz's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. . . .
>
> Despite [Schwartz's] contention he would not be capable of sedentary work implied by virtue of his application for disability insurance benefits, the undersigned finds that even accounting for his subjective complaints at hearing, [Schwartz] would be able to perform work as described in the above-listed residual functional capacity assessment. Moreover, his treatment records show that his symptoms improved shortly after starting treatment. Finally, the undersigned finds insufficient evidence that [Schwartz's] anxiety and depression had a significant impact on his ability to carry [out] basic work activities. . . .
>
> [Schwartz's] activities of daily living, social functioning, and concentration, persistence, or pace further support that finding. According to his function report, [Schwartz] can sit and fold clothes, make meals three times per week taking up to 45 minutes to prepare, drive, and pick up his children from school. He also admitted he can lift, squat, bend, stand, walk, kneel, and reach for 20 minutes at a time. While these activities do not indicate [Schwartz] has no functional limitations, they show he can sit for extended periods and use

> his hands to manipulate objects--much like that required of
> sedentary work. As such, the undersigned finds him only
> mildly limited in activities of daily living.

(Administrative Record at 12-14.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Schwartz's treatment history, medical history, functional restrictions, effectiveness of medications, and activities of daily living in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Schwartz's subjective allegations of pain and disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Schwartz's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## V. CONCLUSION

The Court finds that the ALJ properly considered and addressed the medical evidence and opinions in the record, including the opinions of Dr. Ricketts. The Court also finds that the ALJ properly determined Schwartz's credibility with regard to his subjective complaints of pain and disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 4) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 17th day of November, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA